IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| PLAINTIFF, | Civil Action No. |
| v. | |
| $2,350,309.90 IN FUNDS SEIZED FROM JP MORGAN CHASE BROKERAGE ACCOUNT ENDING 5392; $560,504.62 IN FUNDS SEIZED FROM VANGUARD BROKERAGE ACCOUNT ENDING 9187; $57,000.00 IN FUNDS SEIZED FROM FIDELITY INVESTMENTS BROKERAGE ACCOUNT ENDING 9566; $57,000.00 IN FUNDS SEIZED FROM FIDELITY INVESTMENTS BROKERAGE ACCOUNT ENDING 9568; AND ASSORTED JEWELRY, | |
| DEFENDANTS. | |

## VERIFIED COMPLAINT FOR FORFEITURE

NOW COMES Plaintiff United States of America, by Ryan K. Buchanan, United States Attorney, and Norman L. Barnett, Assistant United States Attorney, for the Northern District of Georgia, and shows the Court the following in support of its Verified Complaint for Forfeiture:

1

## NATURE OF THE ACTION

1.  This is a civil forfeiture action against funds from various brokerage accounts and jewelry seized as part of a pill mill investigation involving a medical clinic operating in the Northern District of Georgia.

## THE DEFENDANTS *IN REM*

2.  The defendant property consists of the following Defendant Funds and Defendant Jewelry (collectively, "Defendant Property").

<u>Defendant Funds</u>

a.  $2,350,309.90 in funds seized from JPMorgan Chase brokerage account ending 5392 in the names of Aneesh Gupta and Bipindeep Gupta, pursuant to a Federal seizure warrant, on or about May 23, 2024 ("Defendant $2,350,309.90");

b.  $560,504.62 in funds seized from Vanguard brokerage account ending 9187 held in the name of Aneesh Gupta and Bipindeep Gupta, pursuant to a federal seizure warrant, on or about May 8, 2024 ("Defendant $560,504.62");

c.  $57,000.00 in funds seized from Fidelity Investments brokerage account ending 9566 held in the name of Aneesh Gupta pursuant to a federal seizure warrant, on or about May 14, 2024 ("Defendant

$57,000.00”); and

d.      $57,000.00 in funds seized from Fidelity Investments brokerage account ending 9568 held in the name of Bipindeep Gupta pursuant to a federal seizure warrant, on or about May 14, 2024 (“Defendant $57,000.00”).

<u>Defendant Jewelry</u>

e.      Assorted jewelry seized during the execution of a Federal search warrant at the residence of Aneesh Gupta and Bipindeep Gupta on or about April 10, 2024, more particularly described as:

   i.      One Ladies 14K White Gold 22” Adjustable Snake Chain;

   ii.     One Ladies 22K Yellow Gold Pendant with 24” Rope Chain Necklace;

   iii.    One Ladies 22K Yellow Gold 18” Khanda Necklace with Lobster Lock;

   iv.     One Ladies 14K White Gold Diamond Infinity Pendant;

   v.      One Ladies 22K Yellow Gold Multi-Color Single Earring with Rubies, Emeralds, and Pearls;

   vi.     One Ladies 18K White Gold 18” Diamond Tennis Necklace;

   vii.    One Ladies 14K White Gold 7” Diamond Tennis Bracelet;

viii.   One Ladies 18K White Gold Diamond Bangel Bracelet;

ix.   One Ladies 18K Yellow Gold Diamond Bangel Bracelet;

x.   One Ladies 18K White Gold Diamond Bangel Bracelet; and

xi.   One Ladies 18K Yellow Gold Diamond Bangel Bracelet.

**JURISDICTION AND VENUE**

3.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355.

4.   This Court has *in rem* jurisdiction over the Defendant Property pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district.

5.   Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1)(A) because the acts or omissions giving rise to the forfeiture occurred in this district.

6.   The Defendant Funds are presently being held in a secure account maintained by the DEA.

7.   The Defendant Jewelry is presently being held by the DEA in a secure location.

## BASIS FOR FORFEITURE

### Relevant Statutes

8.  The Defendant Funds and Defendant Jewelry are subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) on the grounds that they were furnished or intended to be furnished in exchange for a controlled substance, constitute proceeds traceable to such an exchange, or were used or intended to be used to facilitate a violation of 21 U.S.C. § 841.

9.  The Defendant Funds and Defendant Jewelry are also subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) on the grounds that they were furnished or intended to be furnished in exchange for a controlled substance, constitute proceeds traceable to such an exchange, or were used or intended to be used to facilitate a violation of 21 U.S.C. § 846.

10. The Defendant Funds and Defendant Jewelry are also subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) on the grounds that they constitute or were derived from proceeds traceable to a violation of a "specified unlawful activity."

11. 18 U.S.C. § 1956(c)(7) defines, in relevant part, a "specified unlawful activity" as any act or activity constituting an offense listed in 18 U.S.C. § 1961(1).

12.     18 U.S.C. § 1961(1) includes, as part of the list of offenses, "dealing in a controlled substance or listed chemical."

13.     The Defendant Funds and Defendant Jewelry also are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) because they were involved in or were traceable to a money laundering transaction or attempted money laundering transaction in violation of 18 U.S.C. § 1956.

14.     The Defendant Funds and Defendant Jewelry also are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) because they were involved in or were traceable to a money laundering transaction or attempted money laundering transaction in violation of 18 U.S.C. § 1957.

## **Factual Background**

### *DEA Identifies FASTMD4YOU as a Pill Mill*

15.     Beginning in approximately December 2020, DEA began investigating certain individuals for the suspected operation of a pill mill in the Northern District of Georgia.

16.     A pill mill is a term used to describe a doctor, pharmacy or clinic that prescribes or dispenses large quantities of controlled substances for no legitimate medical purpose, or not in the course of professional practice, which is a violation of Federal narcotics trafficking laws.

17.     Certain common characteristics that a physician is issuing prescriptions illicitly include, but are not limited to:

a.      Physicians performing cursory medical examinations or none at all;

b.      Physicians skipping or ignoring urine drug screens;

c.      Physicians not requiring patients' medical histories;

d.      Physicians prescribing excessive amounts of controlled substances;

e.      Physicians prescribing multiple drugs within the same category (e.g., Schedule II painkillers);

f.      Physicians prescribing more than one prescription for the same drug in a one-month period;

g.      Physicians failing to treat patients with anything other than controlled substances;

h.      Physicians failing to heed others' warnings that drug-seeking persons are trying to obtain controlled substances from the physician;

i.      Physicians maintaining inappropriate relationships with patients;

j.      Physicians failing to conduct an independent evaluation of the patient, i.e., allowing patients to suggest or direct which medications to provide;

k.      Physicians running a practice where "appointments" are not for a

specific time;

l.   Physicians fabricating or not maintaining patient files;

m.   Physicians operating a cash-only business;

n.   Physicians not accepting insurance;

o.   Physicians directing patients to a particular pharmacy to fill their prescriptions;

p.   Pharmacies refusing to fill a physician's prescriptions because of suspicious activity or high numbers of controlled substance prescriptions;

q.   Patients filling multiple prescriptions in the same month for the same drug or a drug with similar therapeutic effects, but at different pharmacies to conceal the prescriptions being filled;

r.   Patients traveling long distances to visit the physician;

s.   Patients appearing and behaving in a manner consistent with abusing, or being addicted to, controlled substances; and

t.   Patients openly engaging in drug deals or discussing diverting their prescriptions.

18.   Law enforcement suspected that Dr. Aneesh Gupta ("Aneesh Gupta"), an Atlanta-area physician registered with the DEA to treat drug addiction, was

unlawfully operating a pill mill at his medical clinic: FASTMD4YOU, located at 3473 Lawrenceville Suwanee Road, Suwanee, Georgia 30024.

19.    According to the Georgia Secretary of State, FASTMD4YOU was established in January 2015.

20.    FASTMD4YOU was registered as a pain management clinic with the Georgia Composite Medial Board in October 2015.

21.    The investigation revealed that, since at least 2018, Aneesh Gupta, while working at FASTMD4YOU, illegally provided prescriptions and controlled substances in a manner consistent with pill mills.

22.    During the investigation, DEA observed the following characteristics of a pill mill at FASTMD4YOU:

a.    Aneesh Gupta regularly prescribed excessive amounts of controlled substances;

b.    Aneesh Gupta has not received proper pain management training;

c.    Aneesh Gupta has not received pain management certification;

d.    Patients received minimal or non-existent medical examinations, evaluation, or testing prior to Aneesh Gupta writing prescriptions for controlled substances;

e.    Patients were issued prescriptions when they had not been seen for a

visit;

    f.    Patients traveled lengthy distances, passing numerous qualified practitioners and pain clinics that would offer similar care, to see Aneesh Gupta;

    g.    FASTMD4YOU mostly received payments in cash or through Zelle, a person-to-person electronic payment system.

23.    FASTMD4YOU operated Monday through Friday, purportedly between the hours of 10:00 a.m. and 4:00 p.m.

24.    The investigation revealed that a sign posted on FASTMD4YOU's front door indicated that it is an urgent pain clinic, however, the sign posted in the window of FASTMD4YOU's front door said, "no walk-ins please."

25.    The investigation also revealed that pill seekers would drive long distances because of how FASTMD4YOU operates and because they believed Aneesh Gupta would not take the necessary steps to verify patients' needs for a prescription.

26.    The investigation also revealed that Bipindeep Gupta was the office manager at FASTMD4YOU.

27.    By information and belief, Bipindeep Gupta is Aneesh Gupta's wife.

28.    The investigation revealed that Bipindeep Gupta has been Aneesh Gupta's

only employee for approximately five years.

29.   During the investigation, DEA observed that Bipindeep Gupta collected cash payments from individuals that obtained prescriptions for controlled substances at FASTMD4YOU and subsequently deposited money into various bank accounts.

30.   The investigation also revealed that Bipindeep Gupta would meet patients in FASTMD4YOU's parking lot, collect cash from them, and bring patients prescriptions, all while the patients remained in their cars.

31.   There is no indication that Aneesh Gupta and Bipindeep Gupta had legitimate income beyond their purported medical practice at FASTMD4YOU.

32.   No individual tax returns were reported for Aneesh Gupta and Bipindeep Gupta for tax years 2017 through 2022.

*Proceeds from the Pill Mill were Deposited into Bank Accounts Associated with Bipindeep Gupta and Aneesh Gupta*

33.   The investigation revealed that, during the relevant time period, Aneesh Gupta and/or Bipindeep Gupta deposited millions of dollars of cash into various bank accounts held in their names and in the names of shell companies, that is, companies that had no legitimate operations or expenses.

34.   Specifically, Aneesh Gupta and/or Bipindeep Gupta registered the following limited liability companies ("LLC") with the Georgia Secretary of State:

   a.   Fast MD, LLC,

   b.   Suwanee Institute of Behavioral Medicine, LLC,

   c.   Suwanee Recovery, LLC,

   d.   Atlanta Auto Injury, LLC and

   e.   Gateway AJ, LLC.

35.   No Georgia tax returns were filed for tax years 2017 through 2022 for Fast MD, LLC, Suwanee Institute of Behavioral Medicine, LLC, Suwanee Recovery, LLC, or Gateway AJ, LLC.

36.   Despite the fact that these companies did not have any legitimate business operations, or reported income or expenses, bank accounts held in the names of these shell companies received millions of dollars in cash deposits, including the Defendant Funds.

37.   Between January 2019 and February 2024, bank accounts associated with Aneesh Gupta and Bipindeep Gupta received approximately $2,536,919.00 in cash deposits.

38.   Similarly, between April 2022 and February 2024, bank accounts associated

with Aneesh Gupta and Bipindeep Gupta received approximately $817,618.49 in Zelle deposits.

39.  As alleged more specifically below, the Defendant Funds, which derived from these cash deposits, constitute proceeds of the pill mill and money laundering.

### Defendants $57,000.00 and $57,000.00 Constitute Proceeds of the Pill Mill and Money Laundering

40.  Renasant Bank account ending 7942 was held in the name of Fast MD, LLC ("RENASANT 7942").  Aneesh Gupta and Bipindeep Gupta were the signatories listed for RENASANT 7942.

41.  Between August 6, 2019 and May 9, 2022, approximately $318,231.21 in cash deposits were made into RENASANT 7942.

42.  During the relevant time period, the overwhelming majority of deposits into RENASANT 7942 were cash deposits.

43.  During this same approximate time period, approximately $57,000 from RENASANT 7942 was deposited into Fidelity Investments brokerage account ending 9566 held in the name of Aneesh Gupta and approximately $57,000 from RENASANT 7942 was deposited into Fidelity Investments brokerage account ending 9568 held in the name of Bipindeep Gupta.

44.     As alleged above, on or about May 14, 2024, DEA seized Defendant $57,000.00 from Fidelity Investments brokerage account ending 9566 held in the name of Aneesh Gupta and seized Defendant $57,000 from Fidelity Investments brokerage account ending 9568 held in the name of Bipindeep Gupta.

45.     Funds from RENASANT 7924 also were transferred to Renasant Bank account ending 6130 held in the name of Aneesh Gupta and Bipindeep Gupta.

### Defendant $560,504.62 Constitutes Proceeds of the Pill Mill and Money Laundering

46.     Renasant Bank account ending 7942 was held in the name of Fast MD LLC ("RENASANT 7942"). Aneesh Gupta and Bipindeep Gupta were listed as signatories for the account.

47.     During the relevant time period, the overwhelming majority of deposits into RENASANT 7942 were cash deposits.

48.     Renasant Bank account ending 6130 was held in the names of Aneesh Gupta and Bipindeep Gupta ("RENASANT 6130"). Aneesh Gupta was the sole signatory for RENASANT 6130.

49.     During the relevant time period, the overwhelming majority of deposits into

RENASANT 6130 were transfers from RENASANT 7942, which was predominantly funded by cash deposits.

50.     During this same approximate time period, approximately $386,960.07 from RENASANT 6130 was transferred to Vanguard brokerage account ending 9187 held in the name of Aneesh Gupta and Bipindeep Gupta.

51.     Quantum National Bank account ending 2913 was held in the name of Aneesh Gupta ("QUANTUM 2913"). Aneesh Gupta and Bipindeep Gupta were listed as signatories on the account.

52.     During the relevant time period, the overwhelming majority of deposits into QUANTUM 2913 were cash deposits.

53.     During this same approximate time period, approximately $87,059.43 was transferred from QUANTUM 2913 to Vanguard brokerage account ending 9187 held in the name of Aneesh Gupta and Bipindeep Gupta.

54.     JPMorgan Chase account ending 1923 was held in the name of Aneesh Gupta ("JPMC 1923"). Aneesh Gupta was the sole signatory listed for JPMC 1923.

55.     Between January 6, 2021 and February 29, 2024,  a total of approximately $862,214.00 in cash was deposited into JPMC 1923.

56.     During the relevant time period, the overwhelming majority of deposits into

JPMC 1932 were cash deposits or transfers from bank accounts in the names of LLCs associated with Aneesh Gupta and Bipindeep Gupta.

57.     During this same approximate time period, approximately $119,942.00 was transferred from JPMC 1923 to Vanguard brokerage account ending 9187.

58.     As alleged above, on or about May 8, 2024, DEA seized Defendant $560,504.62 from Vanguard brokerage account ending 9187 held in the name of Aneesh Gupta and Bipindeep Gupta.

### Defendant $2,350,309.90  Represents Proceeds of the Pill Mill and Money Laundering

59.     During the relevant time period, a total of approximately $702,426.00 was also  transferred from JPMC 1923 to JPMorgan Chase brokerage account ending 5392 held in the name of Aneesh Gupta and Bipindeep Gupta.

60.     JPMorgan Chase account ending 7973 was held in the name of Aneesh Gupta (JPMC 7973). Aneesh Gupta was listed as the sole signatory for JPMC 7973.

61.     During the relevant time period, the overwhelming majority of deposits into JPMC 7973 were cash deposits.

62.     During this same approximate time period, a total of approximately $216,588.49 was transferred from JPMC 7973 to JPMorgan Chase brokerage

account ending 5392 held in the name of Aneesh Gupta and Bipindeep Gupta.

63. JPMorgan Chase account ending 3111 was held in the name of Atlanta Auto Injury, LLC (JPMC 3111). Aneesh Gupta was listed as the sole signatory for the account.

64. During the relevant time period, the overwhelming majority of deposits into JPMC 3111 were cash deposits.

65. During this same approximate time period, a total of approximately $176,585.00 was transferred from JPMC 3111 to JPMorgan Chase brokerage account ending 5392 held in the name of Aneesh Gupta and Bipindeep Gupta.

66. JPMorgan Chase account ending 8116 was held in the name of Fast MD, LLC ("JPMC 8116"). Aneesh Gupta was listed as the sole signatory for the account.

67. Between January 4, 2021 and February 29, 2024, cash deposits totaling approximately $53,660.00 were made into JPMC 8116.

68. During the relevant time period the overwhelming majority of deposits into JPMC 8116 were cash or Zelle deposits.

69. During this same approximate time period, a total of approximately

$382,223.00 was transferred from JPMC 8116 to JPMorgan Chase brokerage account ending 5392 held in the name of Aneesh Gupta and Bipindeep Gupta.

70.     JPMorgan Chase account ending 9169 was held in the name of Gateway AJ, LLC ("JPMC 9169"). Aneesh Gupta was listed as the sole signatory for the account.

71.     During the relevant time period, the overwhelming majority of deposits into JPMC 9169 were cash deposits.

72.     During this same approximate time period, a total of approximately $394,320.00 was transferred from JPMC 9169 to JPMorgan Chase brokerage account ending 5392 held in the name of Aneesh Gupta and Bipindeep Gupta.

73.     JPMorgan Chase account ending 5951 was held in the name of Suwanee Institute of Behavioral Medicine, LLC ("JPMC 5951"). Aneesh Gupta was the sole signatory listed for the account.

74.     Between May 21, 2021 and February 29, 2024, a total of approximately $293,653.00 in cash deposits were made into JPMC 5951.

75.     During the relevant time period, the overwhelming majority of deposits into JPMC 5951 were cash deposits and Zelle deposits.

76.   During this same approximate time period, a total of approximately $478,167.00 was transferred from JPMC 5951 to 9169 to JPMorgan Chase brokerage account ending 5392 held in the name of Aneesh Gupta and Bipindeep Gupta.

77.   As alleged above, on or about May 23, 2024, DEA seized Defendant $2,350,309.90 from JPMorgan Chase brokerage account ending 5392 held in the name of Aneesh Gupta and Bipindeep Gupta.

*Movement of Funds*

78.   It is common for individuals attempting to launder illicit funds to establish multiple accounts in either their names or under LLCs to deposit cash and then quickly transfer funds to other financial accounts in order to make it more difficult for law enforcement officials to trace illicit funds.

79.   Based on the training and experience of law enforcement officers involved in this investigation, these deposits and transfers are consistent with the concealment of illegal proceeds and money laundering because they create an additional layer of concealment and obfuscation of the source of proceeds.

80.   The investigation also revealed that cash deposits into bank accounts associated with Aneesh Gupta, Bipindeep Gupta, and LLCs associated with

them, were made via Automatic Teller Machines (ATMs) with a significant number of deposits into different accounts occurring on the same day at the same ATM, and on the same day at different ATMs.

81. The vast majority of the deposits were under $10,000.00.

82. Depositing cash at different ATMs on the same day and depositing amounts less than $10,000.00 also indicates an attempt to conceal deposit activities and avoid financial institution reporting requirements.

*Quantum National Bank Account Closes Account Due to Suspicious Activity*

83. On or about March 5, 2021, a representative from Quantum National Bank called Aneesh Gupta to discuss his unusual deposit history related to account ending 2913.

84. In response, Aneesh Gupta said he "did not want to be reported for structuring" and asked if he needed to bank somewhere else.

85. Following the telephone call, Aneesh Gupta met with Quantum National representatives in person.

86. During the meeting, Aneesh Gupta said his patients "were drug addicts that have limited access to banking services and engage in credit card fraud" and that he requests payments in cash.

87. Quantum National Bank closed QUANTUM 2913 based on Aneesh Gupta's

behavior, his answers to questions, and the amount of cash being deposited and subsequently transferred out of QUANTUM 2913, which was not commensurate with a legal business.

*DEA Executed a Federal Search Warrant at FASTMD4YOU and Interviewed Aneesh Gupta*

88.   On or about April 10, 2024, DEA executed a Federal search warrant at FASTMD4YOU.

89.   During the execution of the search warrant, DEA agents interviewed Aneesh Gupta.

90.   Aneesh Gupta waived his *Miranda* rights and agreed to speak with law enforcement officers.

91.   During his interview, Aneesh Gupta admitted that his only income came from FASTMD4YOU.

92.   Specifically,   Special Agent Mara Hewitt asked Aneesh Gupta if FASTMD4YOU was his only source of income and he responded, "yeah."

93.   Aneesh Gupta also said he did not take insurance but did not have a reason why.

94.   Agents asked Aneesh Gupta what he does with cash payments from his patients.

95.   In response, Aneesh Gupta said he would bring money back to his house if it was not deposited in a bank.

96.   Agents asked Aneesh Gupta to explain how he charged patients for visits.

97.   Aneesh Gupta again said he did not accept insurance.

98.   Aneesh Gupta also said he charged new patients $450.00 for the first visit and $280.00 for follow up visits, which cost between $280.00 and $300.00.

99.   Aneesh Gupta also admitted that he would hand out prescriptions in the parking lot at FASTMD4YOU.

100.   Additionally, Aneesh Gupta admitted that he saw patients for "follow up" visits in the parking lot and that he would talk to patients on the phone and conduct tele-medicine visits while patients were in their vehicles in the parking lot.

*DEA Executed a Federal Search Warrant at the Residence of Aneesh Gupta and Bipindeep Gupta*

101.   On or about April 10, 2024, following the execution of the search warrant at FASTMD4YOU, DEA executed a federal search warrant at the residence of Aneesh Gupta and Bipindeep Gupta.

102.   In the primary bedroom of the residence, agents located the Defendant Jewelry.

*Administrative Proceedings*

103.   DEA initiated administrative proceedings against the Defendant $57,000.00, Defendant $57,000.00, and Defendant Jewelry on or about April 9, 2024.

104.   Aneesh Gupta, through his counsel, Meg Strickler, Esq., filed claims with DEA to Defendant $57,000.00, Defendant $57,000.00, and Defendant Jewelry, asserting that he is the owner of those assets.

105.   The administrative claim listed 657 Village Manor Place, Suwanee, Georgia 30024 as Aneesh Gupta's address.

106.   The administrative claim listed 75 14th Street NE, Suite 3000, Atlanta, Georgia 30309 as Meg Strickler, Esq.'s address.

107.   Pursuant to 18 U.S.C. § 983(a)(3), DEA referred the matter for judicial forfeiture to the U.S. Attorney's Office for the Northern District of Georgia.

**FIRST CLAIM FOR FORFEITURE**
**21 U.S.C. § 881(a)(6)**

108.   The United States re-alleges and incorporates by reference Paragraphs 1 through 107 of this Complaint as if fully set forth herein.

109.   Based on the foregoing, the Defendant Funds and Defendant Jewelry are subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6) on the grounds that they were furnished or intended to be furnished in exchange for a controlled substance, constitute proceeds traceable to such

an exchange, or were used or intended to be used to facilitate a violation of 21 U.S.C. § 841.

## SECOND CLAIM FOR FORFEITURE
### 21 U.S.C. § 881(a)(6)

110. The United States re-alleges and incorporates by reference Paragraphs 1 through 107 of this Complaint as if fully set forth herein.

111. Based on the foregoing, the Defendant Funds and Defendant Jewelry are subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6) on the grounds that they were furnished or intended to be furnished in exchange for a controlled substance, constitute proceeds traceable to such an exchange, or were used or intended to be used to facilitate a violation of 21 U.S.C. § 846.

## THIRD CLAIM FOR FORFEITURE
### 18 U.S.C. § 981(a)(1)(C)

112. The United States re-alleges and incorporates by reference Paragraphs 1 through 107 of this Complaint as if fully set forth herein.

113. Based on the foregoing, the Defendant Funds and Defendant Jewelry are subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) on the grounds that they constitute or were derived from proceeds traceable to a violation of a specified unlawful activity, including, but not limited to,

dealing in a controlled substance or listed chemical.

## FOURTH CLAIM FOR FORFEITURE
### 18 U.S.C. § 981(a)(1)(A)

114. The United States re-alleges and incorporates by reference Paragraphs 1 through 107 of this Complaint as if fully set forth herein.

115. The Defendant Property is subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A) on the grounds that it constitutes property, real or personal, involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1956 (money laundering), or is property traceable to such property.

## FIFTH CLAIM FOR FORFEITURE
### 18 U.S.C. § 981(a)(1)(A)

116. The United States re-alleges and incorporates by reference Paragraphs 1 through 107 of this Complaint as if fully set forth herein.

117. The Defendant Property is subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A) on the grounds that it constitutes property, real or personal, involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1957 (money laundering), or is property traceable to such property.

**PRAYER FOR RELIEF**

WHEREFORE, the United States prays:

(1)     that the Court forfeit the Defendant Property to the United States of

America;

(2)     that the Court award the United States the costs of this action; and

(3)     such other and further relief as the Court deems just and proper.

This 2nd day of October 2024.

Respectfully submitted,

RYAN K. BUCHANAN
*United States Attorney*
*75 Ted Turner Drive SW*
*Atlanta, GA 30303*
*(404) 581-6000   fax (404) 581-6181*

/s/NORMAN L. BARNETT
*Assistant United States Attorney*
Georgia Bar No. 153292
Norman.barnett@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| PLAINTIFF, | Civil Action No. |
| *v.* | |
| $2,350,309.90 IN FUNDS SEIZED FROM JP MORGAN CHASE BROKERAGE ACCOUNT ENDING 5392; $560,504.62 IN FUNDS SEIZED FROM VANGUARD BROKERAGE ACCOUNT ENDING 9187; $57,000.00 IN FUNDS SEIZED FROM FIDELITY INVESTMENTS BROKERAGE ACCOUNT ENDING 9566; $57,000.00 IN FUNDS SEIZED FROM FIDELITY INVESTMENTS BROKERAGE ACCOUNT ENDING 9568; AND ASSORTED JEWELRY, | |
| DEFENDANTS. | |

## <u>VERIFICATION OF COMPLAINT FOR FORFEITURE</u>

I, Mara Hewitt, have read the Complaint for Forfeiture in this action and

state that its contents are true and correct to the best of my knowledge and belief

based upon my personal knowledge of the case and upon information obtained

from other law enforcement personnel.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

This __2__ day of October 2024.

_____
MARA R. HEWITT
SPECIAL AGENT
U.S. DRUG ENFORCEMENT
ADMINISTRATION